EMAS, J.
BLT Now, LLC (“BLT”), the seller, appeals the trial court’s entry of summary judgment in favor of Appellee, Sewna-rainsing Jankipersadsing (Dr. Sing), the buyer. We reverse, holding that a genuine issue of material fact exists, precluding the trial court’s entry of summary judgment in Dr. Sing’s favor.

FACTUAL BACKGROUND

In November of 2004, Betsy Lee Turner (“Turner”), managing partner for BLT, contracted with WCI communities to purchase a condominium unit (the “Unit”) in Miami Beach. BLT was required to provide a $236,000 deposit on the Unit, and closing was contingent on BLT obtaining financing. BLT was unable to obtain the requisite financing and failed to close on the Unit. In an effort to avoid losing its deposit, BLT requested that WCI allow BLT to obtain another purchaser and assign its interest in the contract. WCI orally agreed to such an assignment but did not provide written consent as required under the contract between WCI and BLT.
BLT was subsequently introduced to Dr. Sing. In June of 2008, Dr. Sing signed a Residential Sale and Purchase Contract with BLT for the Unit. The contract required Dr. Sing to provide a $250,000 down payment on the property, which was deposited in escrow with Coldwell Banker. Additionally, as with the contract between BLT and WCI, Dr. Sing’s contract with BLT was contingent on Dr. Sing’s ability to obtain financing within five days of the effective date of the contract. The contract allowed either party to cancel the contract “[i]f after using diligence and good faith, Buyer is unable to provide the Commitment and provides Seller with written notice that Buyer is unable to obtain a Commitment within the Commitment Period.”
After executing the contract, Dr. Sing utilized the services of Audrey Rosen-baum, a mortgage broker with Southeast Capital Group, Jason Schoen, the branch manager for IndyMac, and Marc Hamer-off, a loan officer for Mortgage Network Solutions, to assist him in his efforts to obtain a financing commitment.
According to Hameroff s affidavit, Ham-eroff pre-approved Dr. Sing for the requested financing at an interest rate of 8.5 percent. Displeased with the high interest rate, however, Dr. Sing, with the assistance of Ms. Rosenbaum, applied for loans with several other lenders in an effort to obtain a more acceptable interest rate. According to Rosenbaum’s affidavit, she *232 was unable to obtain financing from any of the lenders she contacted on Dr. Sing’s behalf. Dr. Sing also applied for a loan with Citi Mortgage, Inc., but Citi Mortgage similarly failed to approve Dr. Sing’s application.
As a result, Dr. Sing sent a letter to BLT to advise that he was canceling the contract due to his inability to acquire financing. Thereafter, Dr. Sing and BLT disagreed as to which party was entitled to Dr. Sing’s deposit. Because Dr. Sing and BLT were unable to reach an agreement, Coldwell Banker instituted the current in-terpleader action against Dr. Sing and BLT. Dr. Sing answered the complaint for interpleader, asserting his entitlement to the interpleaded funds by virtue of having been unable to obtain financing in the exercise of due diligence. He also cross-claimed against BLT. Turner subsequently intervened in the lawsuit, alleging that Dr. Sing forfeited the deposit on the property by failing to exercise diligence in seeking financing. Turner claimed Dr. Sing was offered financing to purchase the Unit but chose to reject that offer.
In support of his motion for summary judgment, Dr. Sing provided the affidavit of Audrey Rosenbaum and the affidavit from the real estate broker for Coldwell Banker. Both supported Dr. Sing’s assertion that he exercised good faith and due diligence in attempting to acquire the financing, but was unable to secure a letter of commitment or pre-approval.
Both parties also relied upon the testimony of Marc Hameroff. BLT relied on Hameroff s affidavit, through which Ham-eroff attested that Dr. Sing qualified for a loan with an 8.5 percent interest rate. Hameroff further attested that Dr. Sing did not like this interest rate and that he therefore turned it down, believing he could obtain a better rate. Dr. Sing, on the other hand, relied on a portion of Hameroffs deposition in which Hameroff stated he was unaware that Dr. Sing’s contract was not directly with the developer, and that very few lenders would consider financing a contract that was not entered into directly with the developer. Dr. Sing contended that had Hameroff known the intricacies of the deal, Hameroff would have had a new contract drawn up between BLT and WCI.[1]

ANALYSIS

“The issue of whether a purchaser exercises due diligence and makes a good faith effort to secure the requisite financing is ordinarily a question of fact for the trier of fact.” Quirch v. Coro, 842 So.2d 184, 186 (Fla. 3d DCA 2003). See *233 also Fieldstone v. Chung, 416 So.2d 11, 12 (Fla. 3d DCA 1982). This case falls squarely within the rule established in Quirch and Fieldstone. Dr. Sing received pre-approval for a loan at an interest rate of 8.5 percent. The only reason Dr. Sing did not pursue a commitment on this loan was because he was not pleased with the interest rate and thought he could obtain a lower rate. Whether this constitutes due diligence and good faith is for the jury to determine.
The dissent indicates that the transaction was complicated by the fact that the assignment — orally agreed upon between WCI and BLT at the time Dr. Sing applied for financing — had not yet been reduced to writing. The dissent describes this situation as requiring a “restructuring” of the transaction. This is an inaccurate characterization. The terms of the contract between WCI and BLT provided for its assignment with the written approval of WCI. The contract between Dr. Sing and BLT also provided that it was subject to WCI assignment. That BLT and WCI had not yet reduced to writing the agreed-upon assignment of the contract to Dr. Sing is of no moment, as it does not pertain to Dr. Sing’s efforts to obtain financing.[2]

CONCLUSION

Dr. Sing failed to conclusively establish he could not obtain financing after exercising due diligence and good faith; thus, there remains a genuine issue of disputed material fact, subject to resolution by the trier of fact.
Reversed and remanded.
SALTER, J., concurs.

. The dissent concludes that Hameroff testified in deposition that there would have been no financing because of the assignment issue. However, a careful reading of the deposition reveals this is not the case. In Hameroff's affidavit he described the terms of this pre-approved loan and averred Dr. Sing "was perfectly qualified for financing of a hotel/condominium development unit and I was certain I could obtain financing for him.” Hameroff was asked in deposition to assume the contract between WCI and BLT prohibited an assignment. Dr. Sing's counsel posed this question: "If the contract from WCI stated this contract cannot be assigned and Dr. Sing was not purchasing directly from WCI, would you change your statement [in your affidavit]?” In answer to that question, Hameroff stated, "we would have to restructure the contract to obtain a firm commitment.” However, Hameroff also stated in his deposition (correctly) that there was an assignment clause in the contract, and it is undisputed that WCI had agreed to BLT’s assignment of the contract to Dr. Sing. Thus, Hameroff's answer to this hypothetical question (which was based upon an incorrect assumption) did not change the position Hameroff took in his earlier affidavit — that Dr. Sing qualified for financing at 8.5%. At best, Hameroff’s statements in deposition created a genuine issue of material fact to be resolved by the trier of fact.

. The dissent suggests that the written approval of the assignment between WCI and BLT also required Dr. Sing’s signature, and that "due diligence would not require that Dr. Sing agree to the new terms." The assignment by WCI to BLT — and Dr. Sing's signature approving it — do not constitute "new terms.” If the dissent’s statement is correct, Dr. Sing could have unilaterally prevented the closing (even if he had obtained more favorable financing) by simply refusing to affix his signature to a document approving the assignment. How would Dr. Sing be able to take the position that he was exercising due diligence and good faith while refusing to sign the very document that granted BLT the right to sell the condominium to him?